Submitted on briefs January 27, reversed and decree entered February 24, rehearing denied March 31, 1925.

## CARRIE M. BICKNER *v.* JOSEPH W. BICKNER.

(233 Pac. 252.)

**Divorce—Suit Triable De Novo on Appeal.**

1. Under Section 405, Or. L., suit for divorce is in equity and triable *de novo* on appeal; findings below being in no way binding or conclusive.

**Divorce—Findings on Which Decree of Divorce was Based not Sustained.**

2. Evidence *held* not to sustain findings that husband committed adultery, stole, maintained still, or was cruel and inhuman.

**Divorce—Testimony That Defendant in Divorce Suit Violated Game Laws Immaterial.**

3. In suit for divorce on grounds of adultery and cruel and inhuman treatment, testimony that defendant shot female deer in violation of game law *held* immaterial.

**Divorce—Defendant Entitled to Divorce Under Evidence.**

4. In suit for divorce, where wife failed to prove charges, evidence of her cruelty and adultery *held* to entitle husband to divorce.

---

See (1) 19 C. J. 23, 192, 193.   (2) 19 C. J. 137, 142.   (3) 19 C. J. 130.   (4) 19 C. J. 137, 42.

4. Habits and course of conduct as cruelty warranting divorce, notes, Ann. Cas. 1918B, 480, 500; L. R. A. 1918D, 427. See, also, 9 R. C. L. 333, 351.

From Clackamas: WALTER H. EVANS, Judge.

In Banc.

REVERSED.    REHEARING DENIED.

For appellant there was a brief over the name of
*Mr. Wm. M. Stone.*

For respondent there was a brief over the names of
*Mr. Estes Snedecor* and *Mr. Arthur I. Moulton.*

RAND, J.—This is a suit for the dissolution of
the marriage contract brought by Carrie M. Bickner
against her husband, Joseph W. Bickner. By their
pleadings both parties charge the other with adultery
and with cruel and inhuman treatment, and pray for
a divorce. They were intermarried at Portland,
Oregon, on January 19, 1905, and before their separa-
tion were living at Oswego, Oregon. Defendant owns
property of considerable value and plaintiff seeks to
acquire a part of it. There are no children the issue
of the marriage.

The questions involved upon this appeal are purely
questions of fact. The transcript of the testimony con-
sists of nearly three hundred pages of typewritten
matter, the depositions of a number of witnesses and
a number of exhibits, all of which have had careful
consideration, and if the weight of the testimony was
not so overwhelmingly in favor of the defendant we
would feel constrained not to disturb the decree of
the lower court.

1. A suit to dissolve the marriage contract is a suit
in equity which, under the statute (Section 405, Or. L.)
is tried *de novo* upon appeal. The findings of the
lower court upon the facts in a suit are not binding

114 Or.—4

or conclusive upon appeal, as the statute expressly makes it the duty of the court to try the cause without reference to such findings. We will, therefore, state as briefly as possible our grounds of dissent from the conclusion of the trial court.

2. The only material evidence that in any way tends to support plaintiff's charges against the defendant is the testimony of plaintiff and that of her daughter by a former marriage and the husband of her daughter. This testimony consists of alleged admissions which they testified were made by the defendant to the plaintiff in the presence of her daughter and her daughter's husband. Plaintiff herself testified that another woman made certain admissions to her not in the presence of her husband, but this testimony was purely hearsay and incompetent. These alleged admissions, both of the husband and of the other woman, were contradicted by them, and their testimony in contradiction thereof is clear and convincing, while the testimony offered on behalf of the plaintiff in support of said admissions is unreasonable, improbable, unsatisfactory and, we think, utterly unworthy of belief. Both plaintiff and her daughter were impeached by evidence that their general reputation for truth is bad. This was established by the testimony of a large number of witnesses who were well acquainted with plaintiff and her daughter and lived in the same community, one of whom was a near blood relative of the plaintiff. No satisfactory evidence in contradiction thereof was offered.

The cruelty about which plaintiff complains was the alleged operation by defendant in the house where plaintiff and defendant were residing, against the protests of the plaintiff, of a still for the manufacture of intoxicating liquor, and the alleged proclivity of defendant to steal articles of personal property and

to bring them to the home, which acts, it is alleged, were the cause of anxiety, apprehension and worry upon the part of the plaintiff and led to the breaking down of her health. That the commission by the husband of acts of this character in a home would cause great unhappiness and misery to a wife of any refinement or uprightness is obvious. After reading and considering all of the testimony we are convinced that these charges are false and that they were manufactured by the plaintiff for the sole purpose of obtaining a divorce and of securing as much as possible of defendant's property. The testimony of the alleged acts was contradicted by witnesses who were in a position to know whether the charges were true or false, and if they had been true we believe they would have caused no unhappiness upon the part of plaintiff because of the character of the plaintiff, as disclosed by the testimony. It is clearly established that the plaintiff was in the habit of drinking intoxicating liquor; that she herself manufactured, in the house where they were residing, both wine and beer, and that she indulged in the drinking of it. The conduct of plaintiff hereinafter referred to demonstrates, we think, that acts of that nature, if they had been committed, would have caused her neither anxiety, apprehension nor worry. Witnesses who were frequently at and about the house where plaintiff and defendant resided, testified that they had never seen any evidence of a still and one who lived within one hundred feet of the house had never observed the odor of mash about the premises, while others testified to the high standing and character of the defendant.

3. At the trial an attempt was made to prove, and testimony was introduced for the purpose of showing, that the defendant shot a female deer in violation of

the game law. This was not a matter in issue, and if it had been in issue it would have been wholly immaterial. We refer to it because it shows plaintiff's willingness to resort, no matter how unjustifiably, to any means to blacken the character of the defendant. The introduction of irrelevant and immaterial testimony is highly improper in any case. It unnecessarily increases the burdens of the courts when called upon to pass upon the case. If the testimony introduced in the trial of a cause could be confined to that which tends to support the issues presented by the pleadings it would greatly lessen the delay incident to the final disposition of the cause and much unnecessary labor upon the part of the court could be avoided.

4. After a careful examination of all of the testimony we find that the defendant did not commit adultery as charged in the complaint, nor operate a still, nor steal articles of personal property, and that the defendant was not guilty of cruel and inhuman treatment towards the plaintiff. On the contrary we find from the testimony that plaintiff's treatment of the defendant was cruel and inhuman; that she was in the habit of using profanity; that she frequently applied to the defendant the most opprobrious and insulting terms and often used language in addressing him too vile and indecent for publication, and that because of such treatment defendant's life was rendered burdensome and he is entitled to a decree dissolving the marriage relations between him and the plaintiff.

Further, we think that the testimony clearly shows that plaintiff herself committed adultery upon frequent occasions and with more than one man. By her own admissions she went to San Francisco with a man who had formerly roomed and boarded at her house. While there they were registered in the name

of the man and mother, and they occupied adjoining rooms connected by a common bath and were there several weeks. In one of the letters which she herself admits having written she refers to this man and states that he was suffering from a venereal disease and in a subsequent letter that he had been cured. The testimony of several witnesses shows that she was seen in bed on several occasions with another man at another rooming-house in San Francisco.

For these reasons the decree of the lower court is reversed and a decree will be entered here in favor of the defendant and against the plaintiff dissolving the marriage relations between them, and it is so ordered.

REVERSED AND DECREE ENTERED. REHEARING DENIED.